UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KOURTNEY NEALY,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>FCA US LLC et al,<br><br>　　　　　　Defendants. | Case No.: 2:21-cv-06552-MEMF-SHKx<br><br>**ORDER GRANTING MOTION TO REMAND [ECF NO. 22] AND REQUESTS FOR JUDICIAL NOTICE [ECF NO. 23, 26]** |

　　　　Before the Court is Plaintiff Kourtney Nealy's Motion to Remand (ECF No. 22) and her Request for Judicial Notice (ECF No. 23), as well as Defendant FCA US LLC's Request for Judicial Notice (ECF No. 26). On April 4, 2022, Court deemed this matter appropriate for resolution without oral argument and vacated the hearing set for April 7, 2022. ECF No. 30; *see* C.D. Cal. L.R. 7-15. For the reasons stated herein, the Court GRANTS the Motion to Remand and the Requests for Judicial Notice.


/ / /

/ / /

1

## BACKGROUND

### I. Factual Background[1]

Plaintiff Kourtney Nealy ("Nealy") purchased a 2018 Jeep Compass vehicle ("the Vehicle") on or about July 21, 2018, that had been manufactured or distributed by Defendant FCA US LLC ("FCA"). ECF. No. 1-2 ("FAC") at ¶¶ 8, 17–19. During the applicable warranty periods, the Vehicle developed multiple defects including those causing jerking while shifting, causing the Vehicle to shut off on its own, and involving other parts that substantially impaired the use, value, or safety of the Vehicle. *Id.* at ¶ 13. The Complaint states that "Plaintiff suffered damages in a sum to be proven at trial in an amount that is not less than $25,001.00." *Id.* at ¶ 20.

### II. Procedural History

On July 16, 2021, Nealy filed this action against FCA in the Superior Court of California, County of Los Angeles, alleging violations of the Song-Beverly Consumer Warranty Act (CAL. CIV. CODE §§ 1790 *et seq.*) and fraudulent inducement. *See generally* FAC. FCA was served on May 10, 2021, and removed this action to federal court on August 12, 2021, citing diversity jurisdiction under 28 U.S.C. § 1441(b). ECF No. 1-1. Nealy filed the instant Motion to Remand and a Request for Judicial Notice on February 25, 2022. *See generally* ECF No. 22 ("Mot."), ECF No. 23 ("Nealy's Request for Judicial Notice"). This Motion was fully briefed on March 24, 2022. *See* ECF No. 24 ("Opp'n"), 27 ("Reply"). Alongside its Opposition, FCA submitted a request for judicial notice. ECF No. 26 ("FCA's Request for Judicial Notice"). The Motion was set for hearing on April 7, 2022.

## REQUEST FOR JUDICIAL NOTICE

### I. Legal Standard

A court may take judicial notice of facts not subject to reasonable dispute where the facts "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). Under this standard, courts may take judicial notice of "*undisputed* matters of public record," but generally may not take judicial notice of "*disputed* facts stated in public records." *Lee v. City of*

---

[1] The facts set forth below are taken from the First Amended Complaint. ECF No. 1-2 ("FAC").

*Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002).

**II.     Nealy's Request for Judicial Notice**

Nealy submits—and asks the Court to take judicial notice of—ten (10) exhibits in support of its Motion for Remand:

1. September 27, 2021 remand order in matter of *Raymond Gutierrrez v. Ford Motor Company, et al*. No. 2:21-cv-05679-MCS-JPR, 2021 WL 4399517 (ECF No. 23, Ex. A)
2. October 5, 2021 remand order in the matter of *Andrew Leigh v. FCA US, LLC, et al.*, No. 8:21-cv-00316-JLS-KESx, 2021WL 4551864 (ECF No. 23, Ex. B)
3. April 28, 2021 remand order in the matter of *Savall v. FCA US LLC*, No. 21CV195-JM-KSCx, 2021 WL 1661051, at *1 (ECF No. 23, Ex. C)
4. April 28, 2021 remand order in the matter of *Mahlmeister v. FCA US LLC*, No. CV2100564-AB-AFMx, 2021 WL 1662578 (ECF No. 23, Ex. D)
5. June 18, 2020, remand order in the matter of *Jason Aaron Feichtmann v. FCA US LLC, et al.*, No. 5:20-cv-01790-EJD, 2020 WL 3277479 (ECF No. 23, Ex. E)
6. July 31, 2020 remand order in the matter of *Norma Leticia Quinones v. FCA US, LLC, et al.*, No. 2:20-cv-006144-RGK-JPRx, 2020 WL 4437482 (ECF No. 23, Ex. F)
7. May 14, 2020 remand order in the matter of *Russell Mullin v. FCA US, LLC, et al.*, No. 2:20-cv-02061-RSWL-PJWx, 2020 WL 2509081 (ECF No. 23, Ex. G)
8. July 7, 2020 remand order in the matter of *Gwendolyn Limon Gonzalez v. KIA MOTORS AMERIC, INC.*, No. 2:20-cv-04381-PA-JPRXx, 2020 WL 3790838 (ECF No. 23, Ex. H)
9. September 29, 2020 remand order in the matter of *Alyson Bourland v. Ford Motor Company, et al.*, No. 5:19-cv-08456-EJD, 2020 WL 5797915 (ECF No. 23, Ex. I)
10. April 29, 2020 remand order in the matter of *Nejad v. FCA US LLC*, No. 220CV02252RGKAGRX, 2020 WL 2079983 (ECF No. 23, Ex. J).

Although a district court generally may not consider any material beyond the pleadings in ruling on a motion to dismiss, the court may take judicial notice of matters in the public record. *Lee,*

250 F.3d at 689–90. The Ninth Circuit has recognized public records, including judgments and other court documents, as proper subjects of judicial notice. *See, e.g.*, *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007); *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992). When taking judicial records under notice, the Court may only do so "not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Lee*, 250 F.3d at 690.

Here, the exhibits submitted by Nealy fall into the category of judicial records that courts have deemed proper for judicial notice. The Court therefore GRANTS Nealy's Request to take judicial notice of Exhibits A–J.

### III. FCA's Request for Judicial Notice

FCA submits—and asks the Court to take judicial notice of—four (4) exhibits in support of its Motion for Remand:

1. Order denying remand in the matter No. CV-20-04892-Ab(Ex) (ECF No. 26, Ex. 1)
2. Order denying remand in the matter No. 5:20-cv-01478-JGB-SHK (ECF No. 26, Ex. 2)
3. Order denying remand in the matter No. 2:20-cv-07618-VAP-MRW (ECF No. 26, Ex. 3)
4. Order denying remand in the matter No. 2:21-cv-08553-JFW-AS (ECF No. 26, Ex. 4)

Here, as with the exhibits presented by Nealy in her Request for Judicial Notice, the exhibits submitted by FCA fall into the same category of judicial records that courts have deemed proper for judicial notice. The Court therefore GRANTS FCA's Request to take judicial notice of Exhibits 1–4.

## MOTION TO REMAND

### I. Legal Standard

The "[f]ederal courts are courts of limited jurisdiction." *Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 773 (9th Cir. 2017) (internal quotation marks omitted). Civil actions may be removed from state court if the federal court has original jurisdiction. *See Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 33 (2002) ("Under the plain terms of § 1441(a), in order properly to remove

[an] action pursuant to that provision, [the party seeking removal] must demonstrate that original subject-matter jurisdiction must lie in the federal courts.").

As a result, removal of a state action may be based on either diversity or federal question jurisdiction. *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The defendant seeking removal of an action from state court bears the burden of establishing grounds for federal jurisdiction. *Geographic Expeditions, Inc. v. Est. of Lhotka*, 599 F.3d 1102, 1106–07 (9th Cir. 2010). Courts resolve all ambiguities "in favor of remand to state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)). A removed case must be remanded "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c).

Diversity jurisdiction exists where the suit is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). "[W]here it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled," the removing defendant must establish by a preponderance of the evidence that the amount in controversy "more likely than not" exceeds $75,000. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). Under these circumstances, "both sides submit proof and the court decides, by a *preponderance of the evidence*, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014) (emphasis added) (citing 28 U.S.C. § 1446(c)(2)(B)). To meet this standard, "[t]he parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (citation and internal quotation marks omitted). Indeed, the parties must provide the court with "real evidence" that illustrates the "reality of what is at stake in the litigation" to guide the court in its assessment. *Id.* at 1198.

///

///

## II. **Discussion**

Nealy argues that the Court should remand this action because FCA has not established diversity jurisdiction. Here, Nealy does not dispute that the parties are diverse; rather, she challenges whether FCA has established that the amount in controversy exceeds $75,000. FCA insists that it has. The amount in controversy is not clear from the face of the Complaint. Nealy expressly pleads for damages "not less than $25,001.00," FAC at ¶ 20, but her prayer for relief does not indicate whether the total amount she seeks exceeds $75,000. *Id.* at Prayer.

As a result, FCA must show by a preponderance of the evidence that the amount in controversy more likely than not exceeds $75,000. *See Guglielmino*, 506 F.3d at 699 ("[B]ecause the allegation in the Jurisdiction and Venue section is not repeated in the Prayer for Relief and does not take account of attorneys' fees, accounting of moneys, or payment of back taxes and benefits, the complaint fails to allege a sufficiently specific total amount in controversy. The uncertainty which is inherent in the . . . Prayer for Relief places this case within the *Sanchez* line of cases, and we therefore apply the preponderance of the evidence burden of proof to the removing defendant."); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) ("In deciding whether the district court had jurisdiction at the time it entered its judgment, the relevant test is . . . 'preponderance of the evidence' . . . ."). FCA asserts that the amount in controversy requirement has been met because Nealy suffered: (1) "actual damages" of $37,580.99—equal to the purchase price, plus the down payment, less the mileage offset; (2) plus a civil penalty of two times her actual damages ($75,161.98); (3) attorneys fees' of at least $65,000; and (4) an unspecified amount of punitive damages. Nealy contends that FCA has failed to meet its burden because its proffered calculations are merely speculative.

### A. Actual Damages

Under the Song-Beverly Act, actual damages are "equal to the actual price paid or payable by the buyer," minus the reduction in value "directly attributable to use by the buyer." CAL. CIV. CODE § 1793.2(d)(2)(B)–(C). The reduction is based on miles driven before the first attempted repair of the defect. *Id.*

6

FCA alleges that Nealy's actual damages of $37,580.99 are calculated in the following way: First, to calculate the "paid and payable amount," FCA uses the total sales price for the subject vehicle, which is equal to total payments of $42,441 plus a down payment of $250. Opp'n at 15. Therefore, adding $250 to $42,441 results in a total sales price of $42,691. *Id.* FCA notes that, in contrast, the *total cash price* of the Vehicle is $22,150. *Id.*; *see also* ECF No. 25 ("Proudfoot Decl.") at Ex. B. Second, the mileage offset is calculated by subtracting mileage at purchase from the mileage at first repair for an alleged defect, dividing that amount by 120,000, and multiplying that sum by the total cash price of the vehicle.[3] FCA notes that mileage at the time of the lease signing was thirty-five miles and that, "Plaintiff's repair order number 64601, associated with the first concern at 27,719 miles, would be used to calculate any potential mileage offset." *Id.* As a result, the mileage offset calculation would be as follows: $((27,719-35)/120,000)*22,150 = \$5,110.01$. Opp'n at 15. Therefore, FCA contends that the amount of actual damages, equal to the total sales price of $42,691 less the mileage offset of $5,110.01, is $37,580.99, not including civil penalties, attorneys' fees, or punitive damages. *Id.*

Nealy alleges that FCA's mileage offset calculation is speculative because FCA erroneously subtracts the mileage offset from the *total sales price*, as opposed to the *total cash price*, in order to calculate actual damages. Many courts have found the total cash price a more appropriate measure of actual damages. *See, e.g., Alvarado v. FCA US, LLC*, No. 17-cv-00505-JGB-DTBx, 2017 WL 2495495, at *4 (C.D. Cal. June 8, 2017) (using "the total cash price paid for the subject vehicle" to calculate actual damages); *Luna v. FCA US LLC*, No. 21-cv-01230-LHK, 2021 WL 4893567, at *7 (N.D. Cal. Oct. 10, 2021) (concluding that "it is more appropriate to use the total cash price listed in the [contract]" when "the court cannot determine whether Plaintiff has paid all the finance charges that are included in the total sale price of the Vehicle"). Where, as here, FCA has not provided any

---

[3] FCA asserts that "whether Plaintiff . . . is entitled to a mileage offset [is a] mitigating factor[] that should not be considered in calculating the amount in controversy." Opp'n at 22. However, the Ninth Circuit has stated that consideration of use of offsets are appropriate under the Act because "an estimate of the amount in controversy must be reduced if 'a specific rule of law of damages limits the amount of damages recoverable.'" *Schneider v. Ford Motor Co.*, 756 F. App'x 699, 701 n.3 (9th Cir. 2018); *see also id.* ("[A]n estimate of the amount in controversy must be based on the applicable 'measure of damages,' not on what a plaintiff requests in a complaint."). Despite its assertion with respect to whether the Court should consider the mileage offset, FCA nevertheless provides a calculation of actual damages which factors in the mileage offset.

evidence of the amount Nealy has paid to date under the Sales Contract, the Court finds that the total cash price of $22,150 is the appropriate amount to use when calculating actual damages.

Nealy further alleges that FCA has not shown whether the mileage offset should be based upon the first visit or a subsequent visit. Reply at 7–8 (citing *Gutierrez v. Ford Motor Co.*, No. 2:21-cv-05679-MCS-JPRx, 2021 WL 4399517, at *2 (C.D. Cal. Sept. 27, 2021) (concluding that defendant's failure to show why mileage offset should be calculated based on first visit instead of plaintiff's subsequent visits to fix other complained-of defects renders his "calculations of actual damages . . . speculative and self-serving")). The Court disagrees under the circumstances of this case. As Nealy emphasizes, her claim alleges several defects with the Vehicle, and FCA has provided repair orders that reveal that Nealy made multiple repair visits, many involving defects she alleged in her complaint. Proudfoot Decl. at Ex. 2. And, as Nealy points out, these repairs occurred at later mileage marks and, if used, would have further lowered the actual damages calculation. FCA provides no evidence indicating why the mileage offset should be based on the Nealy's first repair visit and not on any of her subsequent repair visits. However, the Court does not find that failure dispositive because even if FCA based its calculations on the last visit listed in FCA's repair orders—as Nealy appears to suggest FCA should—the calculations would still result in an actual damages calculation that—when combined with a civil penalty calculation and an attorneys' fees estimate—would fail to support an amount in controversy greater than $75,000.[4] As a result, this Court finds that FCA has shown by a preponderance of the evidence that the proper measure of actual damages—even if based upon the last repair visit—is at least $11,850.08.

### B. Civil Penalties

A plaintiff may be entitled to a civil penalty no greater than twice the amount of actual damages if they establish that the defendant's violations of the Act were willful. CAL. CIV. CODE § 1794(c). Many courts have held that a court may not simply assume the civil penalty; rather, a

---

[4] According to FCA's warranty repair reports, the last warranty repair occurred at 55,832 miles, when the Vehicle was brought in on July 13, 2020, due to a variety of issues, including concerns with defects causing jerking while shifting and causing the Vehicle to shut off on its own. Proudfoot Decl., Ex. 2, at 17. A mileage offset calculation based on this warranty repair would be as follows: ((55,832-35)/120,000)*22,150 = $10,299.20. Using this visit for the mileage offset, the amount of actual damages, equal to the amount of the total cash price of $22,150.00 less the mileage offset of $10,299.20, is $11,850.08, not including civil penalties, attorneys' fees, or punitive damages

defendant is required to justify the assumption. *See D'Amico v. Ford Motor Co.*, No. 20-cv-2985-CJC-JCx, 2020 WL 2614610, at *3 (C.D. Cal. May 21, 2020) (collecting cases). Such courts have held that courts do not include civil penalties in the jurisdictional analysis "unless the removing defendant makes some showing regarding the possibility of civil damages." *See Savall v. FCA US LLC*, No. 21-cv-00195-JM-KSCx, 2021 WL 1661051, at *3 (S.D. Cal. Apr. 28, 2021) (collecting cases).

In other instances, courts have pointed out that it is absurd to require the defendant to identify specific facts in support of an allegation it denies—namely its willfulness. This Court agrees with those courts who have found that where the defendant has shown the actual damages amount by a preponderance of the evidence and the plaintiff has alleged willful conduct, the defendant has shown civil penalties in an amount twice the actual damages by the preponderance of the evidence. *See, e.g.*, *Ghebrendrias v. FCA US LLC*, No. 21-cv-06492, 2021 WL 5003352, at *2 (C.D. Cal. Oct. 28, 2021) (calculating civil penalty amount where actual damages are non-speculative and plaintiffs allege that defendant's failure to comply with obligations of Song-Beverly Act was willful); *Rahman v. FCA US LLC*, No. 21-cv-02584, 2021 WL 2285102, at *2–3 (C.D. Cal. June 4, 2021) (considering penalties where plaintiff alleges that defendant willfully and intentionally failed to comply with Song-Beverly).

Here, Nealy's Complaint alleges that she is entitled to a civil penalty and that FCA has engaged in willful conduct. FAC at ¶¶ 40–42, 47, 50, 54, Prayer. Consistent with the holdings in the cases cited above, this is sufficient. *See Rahman*, 2021 WL 2285102, at *2–3 ("Defendant is not required to prove the case against itself. . . . Plaintiff here alleges that defendant willfully and intentionally failed to comply with Song-Beverly. Accordingly, '[t]he Court will consider civil penalties.'" (quoting *Brooks v. Ford Motor Co.*, No. 20-cv-00302-DSF-KKx, 2020 WL 2731830, at *2 (C.D. Cal. May 26, 2020))); *Brooks*, 2020 WL 2731830, at *2 ("It would be absurd to suggest a defendant must offer evidence showing it willfully failed to comply with the Song-Beverly Act, given that most defendants . . . will 'den[y] that it willfully failed to comply with the Song-Beverly.' It is sufficient that Plaintiff alleged an intentional failure to comply and sought the civil penalty.").

Nealy also contends that FCA's estimate of civil penalties in this case are unsupported and speculative, given that civil penalties under the Act are based on actual damages. Mot. at 12; *see Leigh v. FCA US LLC*, No. 8:21-cv-00316-JLS-KESx, 2021 WL 4551864, at *3 (C.D. Cal. Oct. 5, 2021) ("[Defendant's] estimate of civil penalties in this case are also unsupported and speculative given that civil penalties under the Act are based on actual damages."). However, because this Court finds that FCA successfully established actual damages by a preponderance of the evidence, the Court similarly finds that FCA's estimate of civil penalties in this case are supported by the evidence and non-speculative.

As a result, this Court finds that FCA has shown by a preponderance of the evidence that a civil penalty amount of at least $23,701.60—twice the minimum amount of actual damages—should be included in the amount in controversy.

### C. Attorneys' Fees

"[A] court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch v. Swift Transp. Co., LLC*, 899 F.3d 785, 793–94 (9th Cir. 2018). However, a removing defendant must "prove that the amount in controversy (including attorneys' fees) exceeds the jurisdictional threshold by a preponderance of the evidence," and to "make this showing with summary-judgment-type evidence." *Id.* at 795. "A district court may reject the defendant's attempts to include future attorneys' fees in the amount in controversy if the defendant fails to satisfy this burden of proof." *Id.*

FCA does not explicitly provide a value of attorneys' fees that it alleges Nealy asserts. Instead, it states: "Plaintiffs' attorneys in Song Beverly cases tried or prepared for trial regularly request more than $65,000. . . . Defendants' list of values of attorneys' fees sought by Plaintiffs' attorneys in other Song-Beverly cases is sufficient enough to demonstrate the relief the court may grant . . . ." Opp'n at 18–20. FCA cites to several prior Song-Beverly Act cases in which Nealy's counsel submitted fee requests in support of this calculation. *Id.*

As Nealy points out, FCA has failed to "compare the facts or circumstances of *this* case to the any other *potentially* relevant cases." Reply at 9. Without such a comparison, the Court cannot

find—even by a preponderance of the evidence—that attorneys fees in any particular amount should be included.

Accordingly, the Court finds that FCA has failed to meet its burden of showing by a preponderance of the evidence that attorneys' fees should be included in the amount in controversy.

### D. Punitive Damages

Punitive damages are recoverable "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." CAL. CIV. CODE § 3294(a). In support of its assertion that punitive damages should be included in the amount in controversy calculation, FCA asserts that Nealy seeks punitive damages for her fraudulent inducement claim. Opp'n at 7 (citing FAC at Prayer).

However, the mere fact that a plaintiff seeks punitive damages does not necessarily establish the requisite amount in controversy. *See Conrad Assocs. v. Hartford Acc. & Indem. Co.*, 994 F. Supp. 1196, 1201 (N.D. Cal. 1998) ("Defendant's burden cannot be met simply by pointing out that the complaint seeks punitive damages and that any damages awarded under such a claim could total a large sum of money, particularly in light of the high burden that must be met in order for a plaintiff even to be eligible for receipt of discretionary punitive damages.").

As Nealy notes, punitive damages are often calculated as a multiplier of the plaintiff's actual damages. Mot. at 14. Similar to calculating civil penalties, where actual damages are uncertain, any calculation of punitive damages would be speculative. Here, however, because the Court found that actual damages were *not* speculative, punitive damages are not necessarily speculative.

Nonetheless, the Court finds that the punitive damages calculation in this case is still too speculative. Aside from mentioning briefly several times throughout its Opposition that Nealy seeks punitive damages, FCA engages in no meaningful discussion regarding Nealy's purported punitive damages. At no point does FCA propose a specific amount of punitive damages it contends Nealy seeks. As a result, the Court finds that FCA failed to meet its burden here.

Therefore, because the total amount of actual damages and civil penalties that FCA has been able to show is only $35,550.24,[5] the Court finds that the amount-in-controversy requirement has not been met.

### III. Conclusion

In light of the foregoing, the Court hereby GRANTS Nealy's Request for Judicial Notice of Exhibits A–J, FCA's Request for Judicial Notice of Exhibits 1–4, and Nealy's Motion to Remand.

IT IS SO ORDERED.

Dated: April 22, 2022

MAAME EWUSI-MENSAH FRIMPONG
United States District Judge

---

[5] As discussed above, the Court calculates actual damages to be at least $11,850.08 and civil damages at least $23,700.16. Therefore, the amount in controversy is at least $35,550.24.